UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09-CV-778-H

| | |
|---|---|
| HEALTHCARE UNDERWRITERS GROUP OF KENTUCKY | PLAINTIFF |
| V. | |
| LEXINGTON INSURANCE COMPANY | DEFENDANT |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Healthcare Underwriters Group of Kentucky ("Healthcare"), brought this action seeking a Court declaration that it did not engage in bad faith in its defense of insured Pikeville Medical Center, Inc. ("PMC") on a separate medical negligence lawsuit. Defendant, Lexington Insurance Company ("Lexington"), provides secondary insurance coverage to PMC and became liable for a portion of a large jury verdict in the underlying medical negligence case. At this time, Lexington asks the Court to decline jurisdiction over the case largely because a similar action is pending in state court. For the reasons that follow, the Court concludes that Lexington's request is appropriate.

I.

Like most claims involving alleged bad faith by an insurance company, this case arises from an insurance carrier's handling of a separate dispute. On February 9, 2006, Eric Lester filed a medical negligence lawsuit against PMC. At all relevant times, Healthcare defended the action. The lawsuit proceeded to trial in Pike Circuit Court in late 2008 and a jury awarded Mr. Lester approximately $4,000,000.00 in damages.

To cover such liabilities, PMC has three relevant means of insurance. For primary

coverage, PMC contracts with Healthcare to cover any liabilities from $0.00 to $1,000,000.00. When liability exceeds $1,000,000.00, PMC is self-insured for liabilities up to $1,250,000.00. Past that amount, PMC contracts with Lexington for coverage of liabilities up to $10,000,000.00. Following this plan, Healthcare would be responsible for $1,000,000.00 of the award, PMC would be responsible for $250,000.00 and Lexington would be responsible for approximately $2,750,000.00.

Following the jury verdict, Lexington and PMC began alleging that Healthcare engaged in bad faith in its handling of Mr. Lester's lawsuit. In essence, they argue that Healthcare failed to settle the claim within its policy limits when such a settlement was offered by Mr. Lester.[1] From December 2008 to September 2009, Lexington and PMC consistently demanded that Healthcare take full responsibility for the nearly $4,000,000.00 verdict and Healthcare repeatedly offered only its $1,000,000.00 limits. The parties frequently attempted negotiations and scheduled a mediation session for September 24, 2009. Two days before that mediation, Lexington and PMC again warned Healthcare that unless it accepted full responsibility, they would file suit in Pike Circuit Court. At that time, Lexington and PMC gave Healthcare a copy of the complaint they intended to file.

The September 24, 2009, mediation was unsuccessful. Immediately following that session, both parties filed separate lawsuits. Healthcare filed this action seeking declaratory judgment against Lexington only. At roughly the same time, Lexington and PMC jointly filed suit in Pike Circuit Court alleging bad faith against Healthcare. The Pike Circuit Court case remains pending and is currently in the discovery stage.

---

[1] Healthcare denies that Mr. Lester ever made such a settlement offer. However, that factual dispute is not relevant to the Court's resolution of the pending motion.

## II.

The parties agree that the Court has discretion to decide whether to exercise jurisdiction over a claim brought under the Declaratory Judgment Act. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."). The Sixth Circuit requires a district court weigh five factors in exercising that discretion. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008). Those factors are:

> (1) whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
> (5) whether there is an alternative remedy which is better or more effective.

*Id.* Weighing those five factors, the Court believes that exercising jurisdiction in this case would be improper in these circumstances.

## A.

While it is certainly true that this action may settle the controversy between Healthcare and Lexington, those two insurance companies are not the only parties having an interest in the result. Rather, PMC has a direct and significant interest in whether Healthcare acted with bad faith in failing to settle Mr. Lester's lawsuit within Healthcare's $1,000,000.00 policy limits. Because PMC is not a party to this case, and cannot become a party without destroying diversity jurisdiction, the Court is unable to fully settle the controversy surrounding the alleged bad faith. *See Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 814 (6th Cir. 2004) (finding

3

that the district court abused its discretion in exercising jurisdiction, in part, because any judgment in federal court would not bind a necessary third party who could retry the same issues in a pending state court action). The first factor, thus, weighs strongly in favor of declining jurisdiction.

B.

Frequently, the analysis of the second factor is much like that of the first. *Scottsdale*, 513 F.3d at 557. That is true here. Although a declaratory judgment would clarify the legal relationship between Healthcare and Lexington, it would not clarify the legal relationship between Healthcare and PMC. In *Bituminous*, the plaintiff was an insurance company seeking a declaration that it owed no duty to defend or indemnify its insured, a lumber company, because the injured person was an employee of the lumber company. However, the plaintiff did not join the injured person as a party to the case. The Sixth Circuit, in deciding that the second factor also weighed against exercising jurisdiction, held that any judgment would not clarify the legal relationship between the plaintiff and the injured party. *Bituminous*, 373 F.3d at 814. Like in *Bituminous*, an adverse judgment against Lexington in this case would bind it in the pending Pike Circuit Court case but it would not prevent PMC from seeking a judgment of bad faith.[2]

Furthermore, the nature of this claim strongly indicates that the second factor weighs against exercising jurisdiction. "Normally, when a putative tortfeasor sues an injured party for a

---

[2] The Court recognizes that the Sixth Circuit distinguished *Bituminous* in *Scottsdale*, finding that the inquiry should only be whether the declaratory judgment would clarify the legal relationships presented to the Court. However, the Sixth Circuit further explained that the decision to exercise jurisdiction in *Scottsdale* would not have confused the state court proceeding because all relevant parties were before the district court with respect to the judgment sought. *Scottsdale*, 513 F.3d at 557-58. That is not true here. Rather, like the exact facts of *Bituminous*, PMC will be able to litigate the exact issue of bad faith in the state court action regardless of the decision of this Court. Thus, the Court believes that *Bituminous* still provides the proper analysis of this factor. Even if it does not, however, the other factors weigh so strongly against exercising jurisdiction that the Court would reach the same conclusion even if this factor favored Healthcare's position.

declaration of nonliability, courts will decline to hear the action in favor of a subsequently-filed coercive action by the 'natural plaintiff.'" *AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004). That rule is generally followed unless some harm would befall the declaratory plaintiff by not proceeding with the declaratory action. *Id.* Here, no harm will befall Healthcare by this Court's decision not to exercise jurisdiction. While it is true that Lexington and PMC made multiple demands of Healthcare over a long period of time, those demands were not preventing it from continuing its business in any manner. Moreover, it is undisputed that the parties were in mediation up to the date this action was filed and that Lexington and PMC filed their action at the same time as the present action. Thus, the general rule announced in *AmSouth* applies directly to this case and the second factor weighs against exercising jurisdiction.

## C.

It also appears that Healthcare may have engaged in "procedural fencing" or "a race to res judicata." "The third factor is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum.'" *Scottsdale*, 513 F.3d at 558 (quoting *AmSouth*, 386 F.3d at 788). Healthcare filed this action the same day as Lexington and PMC filed their action in state court. Moreover, Healthcare was aware of Lexington and PMC's intention and had actually seen the draft complaint two days before filing this suit. Finally, Healthcare filed this suit against Lexington only, failing to join PMC because such joinder would destroy diversity jurisdiction. Thus, Healthcare has willing exposed itself to multiple lawsuits on the exact same issue. It appears that the reason for such an action is to get a judgment in this Court, a presumptively favorable forum, before judgment is rendered in Pike

Circuit Court.[3]

**D.**

Another factor which this Court can consider is whether this Court's retention of jurisdiction would increase the friction between federal and state courts. To resolve this possibility the Sixth Circuit has suggested that this Court consider three sub-factors:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale*, 513 F.3d at 559-60 (citations and quotations omitted).

The underlying factual issues here concern Healthcare's handling of Mr. Lester's claim of medical negligence. Whether Healthcare's actions constituted bad faith will depend greatly on facts such as whether Mr. Lester made a settlement offer within its policy limits. Those same facts are squarely before the state court in the pending action filed by Lexington and PMC.

For the second sub-factor, there is no indication that this Court or the state court will be in a better position to evaluate the underlying legal and factual issues. While it is true that the Pike Circuit Court is the same court that heard the medical negligence claim, this action depends mostly on facts not relevant to that trial. The relevant facts here relate to settlement negotiations. Moreover, courts generally only consider state courts better equipped under sub-factor two

---

[3] Again this case is factually similar to *AmSouth*. There, the Sixth Circuit found procedural fencing where the declaratory plaintiff was engaged in settlement negotiations with the natural plaintiff and filed its action just one day after saying it would consider the settlement offers. *AmSouth*, 386 F.3d at 789-90. Likewise, in this case, Healthcare was engaged in settlement negotiations and even attended a mediation session the same day it filed this action. Thus, it is not likely that Healthcare was motivated by fear of threatened but not yet instituted legal action.

where there is a novel question of state law. *Id.* at 560. There are no novel questions involved in this case.

For the final sub-factor, this case involves only questions of state law and state public policy. The Sixth Circuit has

> previously found that issues of insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve. The states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation.

*Id.* at 561 (quotations omitted). Therefore, the third sub-factor, and on balance, all of the sub-factors, weigh against exercising jurisdiction.

### E.

Where the declaratory plaintiff's action involves purely state law issues and can be resolved in state court, the final factor generally weighs against exercising jurisdiction. *See Bituminous*, 373 F.3d at 816. However, this factor must be considered based on the specific facts of the case. *Scottsdale*, 513 F.3d at 562. The most important fact here is that the Pike Circuit Court case can resolve all claims of all parties, including PMC. On the other hand, should this Court exercise jurisdiction, it will resolve only the claims between Healthcare and Lexington. The exact same issues, which involve only state law claims, would then be re-litigated in Pike Circuit Court, potentially resulting in different outcomes. Such duplication risks inconsistent outcomes and causes judicial inefficiencies. For these reasons, Pike Circuit Court offers a better and more effective remedy than this Court.

On balance, the factors weigh heavily against this Court exercising jurisdiction. The proper forum to decide this bad faith action is the Pike Circuit Court. Therefore, and being

7

otherwise sufficiently advised,

IT IS HEREBY ORDERED that Lexington's Motion to Dismiss is SUSTAINED and Healthcare's claim is DISMISSED WITHOUT PREJUDICE.

This is a final order.

cc: Counsel of Record